**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| BOB KONKEL and LUISMAEL ROSA, *individually and on behalf of all others similarly situated*,<br><br>Plaintiffs,<br><br>v.<br><br>BROTHER INTERNATIONAL CORPORATION and BROTHER INDUSTRIES (U.S.A.), INC.,<br><br>Defendants. | Civil Action No. 22-00479 (ZNQ) (RLS)<br><br>**MEMORANDUM OPINION** |

**QURAISHI, District Judge:**

Plaintiffs Bob Konkel ("Konkel") and Luismael Rosa ("Rosa") (collectively, "Plaintiffs") filed this putative class action on behalf of themselves and all others similarly situated against Defendants Brother International Corporation ("Brother") and Brother Industries (U.S.A.), Inc. ("BIUS") (collectively, "Defendants") for alleged violations of the Magnuson-Moss Warranty Act ("Warranty Act"), 15 U.S.C. §§ 2301 *et seq.*; the Massachusetts Unfair and Deceptive Business Practices Act ("Massachusetts Consumer Protection Act"), Mass. Gen. Laws Ch. 93A *et seq.*; Deceptive Acts Or Practices, New York Gen. Bus. Law § 349; New York General Business Law § 250; unjust enrichment, fraud, and fraudulent omission. (ECF No. 15). Before the Court is Defendants' motion to dismiss the First Amended Complaint ("FAC") for lack of standing and failure to state a claim for relief pursuant to Fed. R. Civ. P. 12(b)(6). (ECF No. 12 ("Defs.' Moving Br.")). Having considered the parties' submissions, the Court decides this matter without oral argument. *See* Fed. R. Civ. P. 78(b); L. Civ. R. 78.1(b). For the reasons set forth below, Defendants' motion is **GRANTED**.

## I.   FACTUAL BACKGROUND AND PROCEDURAL HISTORY

The relevant facts are derived from the FAC and assumed true for the purposes of this motion.

Defendants distribute a wide array of consumer products including printers, scanners, and other products throughout the United States. (FAC ¶¶ 15-16). In or about January 2020, Konkel alleges that he purchased a Brother Color Inkjet All-in-One Printer from a Staples store located in Fairhaven, Massachusetts. (*Id.* ¶ 3). Similarly, Rosa alleges that he purchased a Brother Laser Multi-function Printer with Wireless and Duplex Printing from a Microcenter Store in Yonkers, New York in or about January 2020. (*Id.* ¶ 6). According to Plaintiffs, their respective printers began to malfunction shortly after purchase. For example, Konkel alleges that his printer "has malfunctioning paper and ink sensors," *id.* ¶ 4, while Rosa alleges only that his printer "began to malfunction slightly shortly after he purchased it" (*id.* ¶ 7).[1]

Plaintiffs cite a "Brother Two-Year Limited Warranty (USA Only)" for their printers ("Warranties") that provides, in relevant part:

> Except as otherwise provided herein, Brother warrants that the Machine and the Accompanying Supply and Accessory Items will be free from defects in materials and workmanship, when used under normal conditions.
>
> \*\*\*
>
> This limited warranty is VOID if this Product has been altered or modified in any way, including but not limited to attempted warranty repair without authorization from Brother and/or alteration/removal of the serial number or rating plate.
>
> **What to do if you think your Product is eligible for warranty service**:
> Report your issue to either Brother Customer Service or a Brother Authorized Service Center within the applicable warranty period.
>
> \*\*\*

---

[1] The Court notes that the FAC does not provide any further details regarding the supposed malfunction of Rosa's printer.

2

> **What Brother will do:**
> If the problem reported concerning your Machine and/or accompanying Supply and Accessory Items is covered by this warranty, Brother or its Authorized Service Center will repair or replace the Machine or accompanying Supply and Accessory Items at no charge to you for parts or labor.
>
> The decision as to whether to repair or replace the Machine and/or accompanying Supply and Accessory Items is made by Brother in its sole discretion.
>
> \*\*\*
>
> The repairs or replacement Machine and/or accompanying Supply and Accessory Items will be sent to you freight prepaid or made available to you for pick up at a Brother Authorized Service Center.
>
> If the Machine and/or accompanying Supply and Accessory Items are not covered by this warranty, you will be charged for shipping the Machine and/or accompanying Supply and Accessory Items back to you and charged for any service and/or replacement parts/products at Brother's then current published rates.
>
> \*\*\*
>
> **What Brother may ask you to do:**
> If Brother elects to repair the Machine, you may be required to deliver (by hand if you prefer) or ship the Product, properly packaged, freight prepaid, to the Authorized Service Center together with a photocopy of your bill of sale.
>
> You are responsible for the cost of shipping, packing the Product, and insurance, if desired. Brother is not responsible for loss or damage to this Product in shipping.

(*Id.* ¶ 3, Ex. A).[2] According to Plaintiffs, they each "would have liked to endeavor to repair [the] product himself . . . but his warranty as written prohibited him from doing so." (*Id.* ¶¶ 4, 7). Plaintiffs further allege that they did not know of the Warranties' purported "repair restriction" until "after purchasing the product and opening the packaging at home." (*Id.* ¶¶ 3, 6). Plaintiffs allege that they "would not have purchased the [Printers], or would have paid significantly less"

---

[2] Rosa also references a "Brother One-Year Limited Warranty and Replacement Service (USA Only)" for his printer. (FAC ¶ 6; Ex. B). That warranty is similar to the warranty referenced by Konkel except that it contains an additional section on the machine replacement process that is not relevant to the allegations in the FAC or Defendants' motion to dismiss.

had they been aware of the Warranties' language. *Id.* Finally, Plaintiffs allege that they each chose not to contact Brother to repair or replace the printers because they "would have had to pay postage and mailing fees to Brother out of pocket," "would have taken a risk of being forced to pay for the return shipping back if Brother elected not to repair his printer," and would be "deprived of the use of the printer . . . during the duration of any transport and repair." (*Id.* ¶¶ 4, 7).

On March 31, 2022, Plaintiffs filed the FAC, asserting seven causes of action: violation of Warranty Act, unjust enrichment, fraud, fraudulent omission, violation of the Massachusetts Consumer Protection Act, and (6) violations of New York Gen. Bus. Law §§ 349 and 350. (*See generally*, FAC). Plaintiffs seek economic damages on behalf of themselves and "purchasers of Brother branded products in the United States with warranty provisions that prohibit self-repair and/or the use of unauthorized parts." (*Id.* ¶ 45).

## II. LEGAL STANDARDS

### A. Rule 12(b)(1)

Standing under Article III of the United States Constitution is an element of subject matter jurisdiction. *See Hartig Drug Co. Inc. v. Senju Pharm. Co.*, 836 F.3d 261, 269 (3d Cir. 2016). Under Rule 12(b)(1), "a court must grant a motion to dismiss if it lacks subject-matter jurisdiction to hear a claim." *In re Schering Plough Corp. Intron/Temodar Consumer Class Action*, 678 F.3d 235, 243 (3d Cir. 2012). "A motion to dismiss for want of standing is . . . properly brought pursuant to Rule 12(b)(1), because standing is a jurisdictional matter." *Ballentine v. United States*, 486 F.3d 806, 810 (3d Cir. 2007).

When considering a Rule 12(b)(1) standing challenge, the Court must determine whether the attack is facial or factual. *Schering Plough*, 678 F.3d at 243. "A facial attack, as the adjective indicates, is an argument that considers a claim on its face and asserts that it is insufficient to

4

invoke the subject matter jurisdiction of the court because . . . it does not present a question of federal law, or because . . . some other jurisdictional defect is present." *Constitution Party of Pa. v. Aichele*, 757 F.3d 347, 358 (3d Cir. 2014). When reviewing a facial attack, a "court must only consider the allegations of the complaint and documents referenced therein and attached thereto, in the light most favorable to the plaintiff." *Gould Elec. Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000). Although the plaintiff bringing an action in federal court bears the burden of establishing jurisdiction, upon reviewing a facial attack, a "court must consider the allegations of the complaint as true." *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977).

Factual attacks, in contrast, argue that subject matter jurisdiction is improper "because the facts of the case . . . do not support the asserted jurisdiction." *Aichele*, 757 F.3d at 358. The presumption of truth does not extend to factual attacks, "and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." *Mortensen*, 549 F.2d at 891. Courts are permitted, however, to weigh and consider facts "outside the pleadings" to decide whether subject matter jurisdiction is proper. *Aichele*, 757 F.3d at 358.

**B.  Rule 12(b)(6)**

Federal Rule of Civil Procedure 12(b)(6) provides that a court may dismiss a claim "for failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). On a motion to dismiss for failure to state a claim, the moving party "bears the burden of showing that no claim has been presented." *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (citing *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991)); *Haney v. USA Gymnastics, Inc.*, No. 21-07213, 2022 WL 909871, at *2 (D.N.J. Mar. 29, 2022). When reviewing a motion to dismiss for failure to state a claim, courts first separate the factual and legal elements of the claims,

and accept all of the well-pleaded facts as true. *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 210–11 (3d Cir. 2009). While Federal Rule of Civil Procedure 8(a)(2) does not require that a complaint contain detailed factual allegations, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted). Thus, to survive a Rule 12(b)(6) motion to dismiss, the complaint must contain sufficient factual allegations to raise a plaintiff's right to relief above the speculative level, so that a claim "is plausible on its face." *Id.* at 570; *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) (citation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). All reasonable inferences must be made in the plaintiff's favor. *See In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 314 (3d Cir. 2010).

**III.   DISCUSSION**

Before addressing the merits of a dispute, a court must determine whether it has subject-matter jurisdiction over the case before it. *See Hollingsworth v. Perry*, 570 U.S. 693, 704–05 (2013). Article III of the U.S. Constitution limits the judicial power of federal courts to deciding "cases" or "controversies." § 2. This limitation serves the purpose of "prevent[ing] the judicial process from being used to usurp the powers of the political branches." *Clapper v. Amnesty*, 568 U.S. 398, 408 (2013) (citations omitted). There are three elements that a plaintiff must meet to satisfy Article III standing. First, there must be an "injury in fact," or an "invasion of a legally protected interest" that is "concrete and particularized." *In re Horizon Healthcare Servs. Data Breach Litig.*, 846 F.3d 625, 633 (3d Cir. 2017) (alteration in original) (quoting *Lujan v. Defs. of*

*Wildlife*, 504 U.S. 555, 560-61 (1992)).  Concreteness is determined by whether the asserted harm has a "close relationship" to a harm traditionally recognized as providing a basis for a lawsuit in American courts. *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2204 (2021) (citing *Spokeo, Inc. v. Robins*, 578 U.S. 330, 341 (2016)).  Some intangible harms may also qualify as sufficiently concrete, such as reputational harms, invasions of privacy, and infringements of fundamental rights.  *Id.*  Second, there must be a "causal connection between the injury and the conduct complained of[.]" *In re Horizon Healthcare Servs. Data Breach Litig.*, 846 F.3d 625, 633 (3d Cir. 2017).  Third, there must be a likelihood "that the injury will be redressed by a favorable decision." *Id.*  In the class action context, at least one named plaintiff must satisfy all these requirements. *O'Shea v. Littleton*, 414 U.S. 488, 494 (1974).  Absent standing, there is no case or controversy, and a federal court cannot exercise subject-matter jurisdiction over the plaintiff's claims.  Courts have an independent obligation to assess whether standing exists.  "If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12 (h)(3).[3]

Here, Defendants contend that Plaintiffs lack standing because they fail to allege (1) an actual injury or (2) a causal connection between any purported injury and the Warranties. (Defs.' Moving Br. 7-10). Specifically, Defendants argue that Plaintiffs do not allege that Brother rejected

---

[3] "In the context of a putative class action lawsuit, '[t]he standing inquiry does not change.' " *In re Mercedes-Benz Emissions Litig.*, No. 16-881, 2016 WL 7106020, at *3 (D.N.J. Dec. 5, 2016) (quoting *In re Franklin Mut. Funds Fee Litig.*, 388 F. Supp. 2d. 451, 461 (D.N.J. 2005)).  In other words, "a predicate to [a plaintiff's] right to represent a class is [her] eligibility to sue in [her] own right. What [she] may not achieve [herself], [she] may not accomplish as a representative of a class." *Kauffman v. Dreyfus Fund, Inc.*, 434 F.2d 727, 734 (3d Cir. 1970).  Indeed, "if none of the named plaintiffs purporting to represent a class establishes the requisite case or controversy with the defendants, none may seek relief on behalf of [herself] or any other member of the class." *Hayes v. Wal-Mart Stores, Inc.*, 725 F.3d 349, 361 (3d Cir. 2013) (quoting *O'Shea*, 414 U.S. at 494).

7

a claim under the Warranties, and while Plaintiffs first learned of the purportedly violative language in the Warranties when they "open[ed] the packaging at home," they did not attempt to return the printers for their full value. (*Id.* at 8) (citing FAC ¶¶ 3, 5-6, 8). As for the Warranties themselves, Defendants argue that the mere allegation that the printers "did not comply with state and federal law because of the unlawful repair restriction attached to the warranty" is insufficient to satisfy Article III standing. (*Id.* at 8-9) (citing FAC ¶¶ 3, 6). According to Defendants, it is well-settled that a statutory violation alone, without a concrete injury, does not support constitutional standing. (*Id.*) (citing *Lujan*, 504 U.S. at 578 and *Doe v. Nat'l Bd. of Med. Exam'rs*, 199 F.3d 146, 153 (3d Cir. 1999)).

In response, Plaintiffs argue that they have adequately demonstrated economic injury under the "benefit of the bargain" theory. (Pls.' Opp'n Br. at 5). In that regard, Plaintiffs highlight allegations that they "purchased the Product, reasonably believing its warranty complied with state and federal law," but that "the Products [Plaintiffs] purchased did not comply with state and federal law because of the unlawful repair restriction attached to the warranty which prohibited [them] from repairing or modifying the Product." (*Id.* at 6) (citing FAC ¶¶ 1, 3, 6). According to Plaintiffs, "[h]ad there been a disclosure, [Plaintiffs] would not have purchased the Product because the unlawful repair restriction would have been material to [them], or at the very least, [they] would have purchased the Product at a substantially reduced price," (*i.e.*, a price premium applied to their purchase price). (*Id.* at 6-7) (citing FAC ¶¶ 5, 8). Plaintiffs argue that it is "sensible and intuitive that a product that contains an unlawful warranty – that is voided by any alteration or modification to the machine – is worth less than a product that does not contain such a restriction." (*Id.* at 7).

"[T]he Supreme Court has repeatedly recognized that financial or economic interests are 'legally protected interests' for purposes of the standing doctrine." *Cottrell v. Alcon Laboratories*,

8

874 F.3d 154, 164 (3d Cir. 2017) (citations omitted). However, if plaintiffs allege "an economic injury as a result of a purchasing decision," they "must do more than simply characterize that purchasing decision as an economic injury [and] must instead allege facts that would permit a factfinder to determine, without relying on mere conjecture, that . . . plaintiff[s] failed to receive the economic benefit of [their] bargain[s]." *In re Johnson & Johnson Talcum Powder Prods. Mktg., Sales Practices & Liab. Litig.*, 903 F.3d 278, 281 (3d Cir. 2018). In other words, under the "benefit of the bargain" theory, a plaintiff can allege facts to show that he bargained for a product at a certain value but received a product worth less than that value, allowing the court to calculate the difference in value between what was bargained for and what was received. *Id.* at 283. Likewise, in *Koronthaly v. L'Oreal USA, Inc.*, the Third Circuit concluded that "[a]bsent any allegation that [the plaintiff] received a product that failed to work for its intended purpose *or was worth objectively less than what one could reasonably expect*," the plaintiff has not demonstrated a concrete injury-in-fact. 374 F. App'x 257, 258 (3d Cir. 2010) (emphasis added).

In *Schmitt v. Newell Brands Inc.*, No. 20-16240, 2023 WL 2662377, at *4 (D.N.J. Mar. 28, 2023), this Court recently provided a survey of the benefit of the bargain theory for establishing standing. In short, plaintiffs proceeding under a benefit of the bargain theory must allege facts demonstrating that they did not receive the benefit of their bargain because either: (1) they received a defective product; or (2) they would not have purchased the product at issue but for a specific misrepresentation made by the defendants, *i.e.*, that the plaintiff was induced into purchasing the product by a specific misrepresentation. *Schmitt*, 2023 WL 2662377, at *6; *see also In re Plum Baby Food Litig.*, No. 21-02417, 2022 WL 16552786, at *7 (D.N.J. Oct. 31, 2022) (finding that "[t]o allege economic harm under the benefit-of-the-bargain theory it is required that plaintiffs identify the specific misrepresentation that induced their purchase"); *Estrada v. Johnson &*

9

*Johnson*, No. 16-7492, 2017 WL 2999026, at *9 (D.N.J. July 14, 2017). The Court agrees with Defendants that the FAC, as pled, does not establish Article III standing.

Here, the FAC does not allege an actual injury to Plaintiffs other than the Warranties' purported violation of the Warranty Act. Specifically, the FAC alleges only that the printers malfunctioned shortly after Plaintiffs purchased the products; that Plaintiffs "would have liked to endeavor to repair [the] products" themselves, but the printers included warranties that unlawfully restricted repair; and that had Plaintiffs known of the repair restriction in the Warranties, they would not have purchased the printers or would have purchased them at a substantially lower price. (FAC ¶¶ 4-5, 7-8). However, allegations of a statutory violation, like the ones here, are insufficient to establish Article III standing. *TransUnion LLC*, 141 S. Ct. at 2205 (citing *Spokeo*, 578 U.S. at 341). "[T]he 'injury in fact' test requires more than an injury to a cognizable interest. It requires that the party seeking review be himself among the injured." *Lujan*, 504 U.S. at 563 (quoting *Sierra Club v. Morton*, 405 U.S. 727, 734-35 (1972)). A statutory violation does not equate to a concrete injury. *See Doe*, 199 F.3d at 153. In *Doe*, the Third Circuit held that the lower court erred because it:

> incorrectly equates a violation of a statute with an injury sufficient to confer standing. The proper analysis of standing focuses on whether the plaintiff suffered an actual injury, not on whether a statute was violated. Although Congress can expand standing by enacting a law enabling someone to sue on what was already a *de facto* injury to that person, it cannot confer standing by statute alone.

*Id.* (citing *Lujan*, 504 U.S. at 578). To the extent that Plaintiffs claim to have demonstrated standing based on allegations that they paid a premium for the printers, the Court concludes that the FAC lacks factual allegations to support that subjective statement. *See Young v. Johnson & Johnson*, 2012 WL 1372286, at *4 (D.N.J. Apr. 19, 2012) (dismissing claims because plaintiff failed to "set forth allegations as to how he paid a premium"). Specifically, Plaintiffs simply allege that they

10

"would have purchased the Product at a substantially reduced price" if they had known about the repair restriction. (FAC ¶¶ 5, 8). Such threadbare, conclusory allegations cannot support Plaintiffs' economic injury claims. *See In re Horizon Healthcare Servs. Inc.*, 846 F.3d 625, 633 (3d Cir. 2017) (threadbare recitals are insufficient; allegations must be supported by "sufficient factual matter"); *Finkelman v. National Football League*, 810 F.3d 187, 194 n.55, 200-01 (3d Cir. 2016) ("standing cannot rest on mere 'legal conclusions' or 'naked assertions'"). Indeed, if plaintiffs allege "an economic injury as a result of a purchasing decision," they "must do more than simply characterize that purchasing decision as an economic injury [and] must instead allege facts that would permit a factfinder to determine, without relying on mere conjecture, that . . . plaintiff[s] failed to receive the economic benefit of [their] bargain[s]." *In re Johnson & Johnson Talcum Powder Prods. Mktg., Sales Practices & Liab. Litig.*, 903 F.3d at 281. In other words, under the "benefit of the bargain" theory, a plaintiff must allege facts to show that he bargained for a product at a certain value but received a product worth less than that value, allowing the court to calculate the difference in value between what was bargained for and what was received. *Id.* at 283.

While Plaintiffs rely exclusively on the recent decision in *Schaer v. Newell Brands Inc.*, No. 22-30004, 2023 WL 2033765, at *1 (D. Mass. Feb. 16, 2023) to support their position on standing, the Court finds this non-binding decision distinguishable. In that case, the plaintiff alleged that she "purchased one Mr. Coffee Easy Measure 12-Cup Programmable Coffee Maker" ("Product") from a Walmart in Chicopee, Massachusetts." *Schaer*, 2023 WL 2033765, at *1. The plaintiff further alleged that the "[d]efendants disclosed on the packaging that the Product included a one-year limited warranty but did not disclose that the warranty included an unlawful repair restriction," which stated in relevant part: "Do NOT attempt to repair or adjust any electrical or mechanical functions on this product. Doing so will void this warranty." *Id.* According to the

11

plaintiff, the coffee maker "began to slightly malfunction" shortly after the plaintiff purchased it when the filter "stopped working correctly." *Id.* The plaintiff allegedly performed "minor disassembly of the Product in an attempt to fix the issue," which, according to the plaintiff, voided the warranty. *Id.* In finding that the plaintiff had demonstrated Article III standing, the court reasoned that the "[p]laintiff's attempt to fix the filter issue did void the warranty, per its terms," and therefore, the plaintiff "was damaged by the warranty's repair restriction." *Id.* According to the court, the plaintiff purchased a product "which […] no longer included a limited warranty after her disassembly, resulting in a lower value of and overpayment for the coffee maker." *Id.* The FAC, here, noticeably lacks any allegations that Plaintiffs attempted to <u>actually repair</u> the printers themselves, and thereby void the Warranties. Rather, as stated above, Plaintiffs allege only that they "<u>would have liked to endeavor</u> to repair [the] products" themselves, but the printers included a warranty that unlawfully restricted repair. (FAC ¶¶ 4, 7) (emphasis added). As such, no allegations exist that Defendants rejected any claim by Plaintiffs under the Warranties. To the contrary, Plaintiffs acknowledge that they never contacted Brother or an Authorized Service Center to repair or replace the printers, or to get any information about a potential repair or replacement. (*Id.*) Accordingly, because the Court concludes that Plaintiffs have failed to plead an actual injury, the FAC is dismissed for lack of standing.

## IV. CONCLUSION

For the reasons set forth above, Defendants' motion to dismiss is **GRANTED**, and Plaintiff's FAC is dismissed without prejudice based on a lack of standing. Plaintiffs are given leave to amend their FAC within 30 days from the date of the accompanying Order consistent with the guidance provided in this Memorandum Opinion.


Dated: May 22, 2023                               *s/ Zahid N. Quraishi*
                                                  Zahid N. Quraishi
                                                  United States District Judge